1

2

3

4

5

6          **IN THE UNITED STATES DISTRICT COURT**

7          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9  **VICTORIA P. YOUNGBLOOD,**        **1:12-cv-1150 AWI  JLT**

10         **Plaintiff,**

11         **vs.**                              **AMENDED MEMORANDUM OPINION**
                                                **AND ORDER ON DEFENDANT'S**
12                                              **MOTION FOR SUMMARY JUDGMENT**
                                                **OR PARTAIL SUMMARY**
13  **CITY OF BAKERSFIELD,**                    **ADJUDICATION**
    **CHRISTOPHER DALTON, GREG**
14  **WILLIAMSON, and DOES 1 to 100,**          **Doc. # 39**
    **INCLUSIVE,**
15

16         **Defendants.**

17

18         [This Memorandum Opinion and Order is Amended as follows for the sole purpose of

19  correcting the spelling errors of the name of Defendant Greg Williamson.  The Order remains

20  unchanged in all other respects.]

21

22         This is an action for damages by plaintiff Victoria P. Youngblood ("Plaintiff") against

23  the City of Bakersfield, Bakersfield Police Officer Christopher Dalton, Bakersfield Police Chief

24  Greg Williamson and DOES 1 to 100, inclusive ("Defendants").  The complaint alleges

25  violations of Plaintiff's constitutional and statutory rights arising from a warranted search of her

26  home at night during which Plaintiff suffered significant injuries to the face, head and neck as a

27  result of being bitten by the police dog being handled by Defendant Dalton.  Of the seven claims

28  for relief alleged in Plaintiff's complaint, three claims for relief including claims for violation of

the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., violation of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 1231 et seq. and a common law claim for intentional infliction of emotional distress have been abandoned.  The remaining claims that are the subject of Defendants' motion for summary judgment are claims for violation of rights granted under the Fourth Amendment in violation of 28 U.S.C. § 1983, violation of California's Bane Act, California Civil Code § 52.1 and claims under California common law for assault and battery and for general negligence.  Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331.  Venue is proper in this court.

### JOINT STIPULATED FACTS AND UNDISPUTED MATERIAL FACTS

The following facts are taken from the parties' joint statement of undisputed facts and from the material facts alleged by either party that are not objected to by the other party.

On Sunday April 8, 2012, Bakersfield police officers were dispatched to the area of Madre Street and Topaz Lane to investigate a suspicious parked vehicle occupied by a White male.  Upon the arrival of two responding police officers, the White male occupying the vehicle identified himself to the police officer as Aaron Youngblood ("Aaron").  Aaron stated he had no identification in his possession but offered a receipt for a motel room where he had stayed the previous night.  The room receipt identified Aaron's residence as 3704 Delaney Street, Bakersfield.  Plaintiff alleges that Aaron informed the officer that he did not live at that address, but that his mother, Plaintiff, did live there and was disabled.  Defendants only object to the extent the Plaintiff's proffered fact is immaterial.  The responding officer observed various items inside the suspicious vehicle that indicated recent activity involving illicit drugs and/or drug paraphernalia.

Based on information provided by the responding officers, Detective Mathew Hilliard prepared a search warrant application to search the residence at 3704 Delaney Street and to search "Aaron Youngblood's white box truck which was parked in front of the residence."  Doc. # 39-2 at ¶6.  Hilliard was informed at some time during the preparation of the warrant application that the residence to be searched was occupied by Plaintiff, who is/was disabled.  A

Kern County Superior Court judge issued the warrant.  The warrant authorized officers to search the residence and the truck for illicit drugs or stolen property.  Bakersfield police officers commenced executing the search warrant at approximately 9:00 p.m. on April 8, 2012.  It is not disputed that it was dark by the time the officers entered the residence.  Among the officers conducting the search was officer Dalton and his K-9 partner, Bronx.

Bronx cleared the immediate area of the kitchen and living room.  It is not disputed that Bronx was taken off-leash sometime between the time of entry and the time the kitchen and living room were cleared.  It is also not disputed that Bronx preceded the officers down the hallway leading to the bedrooms, searching for human presence by sniffing at the doors to the bedrooms.  Bronx, finding no human presence in the rooms in the officers' immediate presence, turned a corner in the hallway and went out of sight.  It is undisputed that Dalton "heard a female screaming in the furthest north bedroom of the residence and he ran through the hallway and saw Bronx biting [Plaintiff's] head.  Plaintiff was transported by ambulance to Kern Medical Center for treatment of dog bite wounds to the head and face.

### PROFFERED MATERIAL FACTS AND OBJECTIONS

Each side has proffered a number of disputed or undisputed material facts to which the opposing party has made some objection.  These facts concern three disputed areas of evidence.  The first area concerns the extent to which officers conducting the search were aware, or should have been aware, that Plaintiff was the primary occupant and that she was debilitated because she suffered from rheumatoid arthritis.  The second area of dispute concerns the extent to which Bakersfield Police gave improper weight to information in excess of 20 years old indicating an individual named Thomas Thoms – a person unknown to Plaintiff or her family – had once listed Plaintiff's address as his residence.  The third area of disputed evidence concerns evidence relating to the conduct of the officers during the search of Plaintiff's residence.  The court will discuss each of these areas of disputed evidence in turn.

**A.  Evidence Concerning Plaintiff's Disability**

Defendants state that "[p]rior to the subject incident, Officer Dalton was not acquainted with [Plaintiff] and did not know she had rheumatoid arthritis. Def's UMF # 31. Defendants also allege that Officer Dalton had no idea that [Plaintiff] was in the residence at the time of the search and had no idea that [Plaintiff] had taken pain and/or sleep medication. Def's UMF # 32. Defendant's proffered facts are not strictly disputed, but Plaintiff offers a number of facts to indicate that facts were known to officers of Bakersfield Police Department who were involved in drafting the warrant application and the preparation of a pre-search plan were aware that (1) Aaron did not reside at 3704 Delaney Street, but lived out of a car, (2) that Plaintiff, Aaron,'s mother, did live at the residence and was disabled, and (3) that officers of the Bakersfield Police knew that Aaron was the son of a Kern County Sheriff's Officer named Donny Youngblood and that Donny Youngblood and Plaintiff were married. See Dec. of Aaron Youngblood, Doc. # 50-8 at ¶¶ 3, 5. See also, Plaintiffs Disputed Material Fact (DMF) # 9 (during investigation for search warrant application, Hilliard was informed that Aaron's mother was disabled). Defendants object to the cited paragraphs of Aaron's Declaration on grounds of relevance. Plaintiff also alleges, without objection that her wheelchair and walker were in plain sight on the front porch over which the officers passed while gaining entry to the residence.

The court concludes there is no actual dispute as to the evidence concerning facts known to Dalton, known to Hilliard and/or other officers charged with the preparation of the warrant application. It is undisputed that Hilliard and Kenneth Farnsworth, the detectives charged with preparing the warrant application, met with Dalton and the other police officers who would conduct the search "to prepare for the execution of the search warrant." Def's UMF # 9. Plaintiff's proffer of disputed material facts, regarding the extent of knowledge possessed by a reasonable officer or an officer following Department policy, may be relevant in the resolution of Plaintiff's claims under the Fourth Amendment or in the context of her claim for general negligence.

**B. Disputed Evidence Regarding Thomas Thoms**

Defendants allege:

> At [the meeting prior to execution of the search warrant] it was explained that the officers would be assisting the detectives in executing a search warrant at 3704 Delaney Court and that there may be a subject named Thomas Thoms at the residence, who was on active probation, had an active no bail felony warrant, and was a member of the Aryan Brotherhood and which, in light of all the known information, meant he may be armed and dangerous.

Defendant's UMF # 11.

Plaintiff alleges that the name "Thomas Thoms" became associated with the 3704 Delaney Court address as a result of the investigation of another detective, Scott Miller, into the theft of Miller's property. The name Thomas Thoms "was shown on a CJIS probation page to have provided 3704 Delaney Court as his home address at some time." Plaintiff's DUMF # 4. Plaintiff alleges that "CJIS probation pages are unreliable and require further investigation to determine if the information they contain is accurate and up to date." Plaintiff's DUMF # 5. Defendants only object to Plaintiff's proffer of facts on the grounds of materiality and relevance. Plaintiff alleges that, before a search warrant is executed, police policy requires that an operational plan is developed and reviewed with the officers involved in the search. "The operational plan form requires that officers do a basic records check of all suspects believed to be at the location of the search." Plaintiff's DUMF # 13. Plaintiff alleges that a basic records check "includes a review of the booking record [and] the rap sheet of the individual suspected to be at the address." Plaintiff's DUMF # 14. Defendants only objection with regard to Plaintiff's proffer of facts is that the facts are not supported by admissible evidence.

Plaintiff alleges:

> A basic booking records check on Thoms, as required by the operational plan form, provided [Bakersfield Police Department] officers information that Thoms claimed the address of 3704 Delaney Court once in 1989. Booking records from four subsequent bookings show that Thoms claimed addressed  in Tehachapi, and twice in 2011, provided the same address on Beardsley avenue.  Review of booking records would also inform officers that Thoms was booked for resisting arrest and weapons charges in 1989 and 1987 respectively.  Thoms rap sheet provided that Thoms had not been arrested for resisting or weapons charges since 1989.  Both the

booking and rap sheet show that Thoms, in April of 2012, was a 52 year old man.

Plaintiff's DUMF # 17.  Plaintiff's proffered fact is not disputed by Defendants.  It is not disputed that Thoms was arrested the following day at the Beardsley Avenue address in Tehachapi without incident and without use of a canine.

### C.  Factual Disputes Regarding Officer Conduct of the Search

The primary factual dispute regarding the conduct of the officers is the extent to which the officers conducting the search made reasonable attempts to give notice to Plaintiff at the time of their entry and at the time Bronx was let off leash.  As an initial matter, there is no dispute that Plaintiff takes prescription drugs for control of pain due to her rheumatoid arthritis, that it was dark and that Plaintiff was asleep at the time police made their entry.  There is also no dispute that police had the residence under surveillance from the time Aaron was arrested in the morning until the search warrant was executed about 12 hours later.  There is no dispute that nothing of significance transpired at the residence during that time.

Defendants allege:

> Prior to entering the house, officer attempted to make phone contact with the residence, made numerous announcements which loudly advised anyone inside the residence that they were the Bakersfield Police Department and had a search warrant (these announcements were loud enough for even the neighbors to hear and for officers who were several houses away), and loudly knocked on the door and windows of the house.

Defendants' UMF # 13.

Defendants also allege that the announcements made prior to entry "were loud, occurred over a period of several minutes and involved banging on the door so hard that the windows were shaking."  Defendants' UMF # 14.  Defendants also allege that, after making entry into the home, the officers made further loud announcements and directed Bronx to "bark" approximately ten times.  Defendants UMF # 18.

Plaintiff disputes many of the particulars of Defendants' description of the effort the officers made prior to the search.  Basically, Plaintiff alleges officers made two announcements prior to entering her home and alleges that Bronx did not bark prior to being let off leash.  Defendants object to the declarations of witnessing neighbors to the extent those declarations purport to describe what did, or did not, transpire inside Plaintiff's residence where the witnesses were not present.

The court notes that the dispute over the extent to which the officers attempted to forewarn Plaintiff of their presence and to warn that Bronx was going to be let off leash is somewhat peripheral to the issue of Defendants' liability under the Fourth Amendment and perhaps only somewhat more relevant to the issue of liability under a theory of negligence.  For purposes of the discussion that follows, the court finds it sufficient to note that the officers made attempts to warn and that Plaintiff did not hear them because she was asleep.  The court also accepts that Plaintiff may have been more difficult to arouse because of the effects of prescription medications use by Plaintiff to treat her rheumatoid arthritis.

Finally, although the point is not addressed by either party's proffered evidentiary facts, Plaintiff alleges in her opposition that there are two varieties of police dog with respect to the dog's interaction with persons following a command by a handler to "find."  One type is trained to "find and bark" at a suspect that is located by means of the dog's sense of sight or smell.  The other type is trained to "find and bite."  Defendants do not dispute Plaintiff's allegation.  Plaintiff's opposition states that Bakersfield Police Department "claims that the dogs [it employs] are of the find and bark variety."  Doc. # 50 at 7:10.  The court notes however, that Defendants contend that Plaintiff was warned by Dalton that anyone not coming out in response to warnings "could be bit."  Defendants' UMF # 18.  There is no allegation by either party that Bronx acted in a way that was not expected or intended.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROCEDURAL HISTORY**

The complaint in this action was filed on July 12, 2012.  No motion to dismiss was filed. The instant motion for summary judgment was filed on November 25, 2013.  Opposition to Defendant's motion was filed on December 24, 2013, and Plaintiff's reply was filed on December 30, 2013.  The matter was taken under submission by order of the court on January 2, 2014.  The court also notes that the parties have stipulated to vacating the trial date and the pretrial conference date and no subsequent trial date has been requested as of this writing.

**LEGAL STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial." Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007).  A party that does not have the ultimate burden of persuasion at trial – usually but not always the defendant – "has both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  "In

order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

1

2      In resolving the summary judgment motion, the court examines the pleadings,

3  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

4  any.  Rule 56(c); <u>Poller</u>, 368 U.S. at 468; <u>SEC v. Seaboard Corp.</u>, 677 F.2d 1301, 1305-06 (9th

5  Cir. 1982).  The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and

6  all reasonable inferences that may be drawn from the facts placed before the court must be

7  drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v.</u>

8  <u>Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)(per curiam); <u>Abramson v. University of Hawaii</u>, 594

9  F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the

10  opposing party's obligation to produce a factual predicate from which the inference may be

11  drawn.  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

12  810 F.2d 898, 902 (9th Cir. 1987).

13                                    **DISCUSSION**

14  **I.  Claims for Violation of Fourth Amendment Rights**

15

16      Plaintiff's first claim for relief for unlawful search and unlawful use of force during the

17  search is alleged against Defendants Dalton, City of Bakersfield and Williams, as well as the

18  Doe Defendants.  Plaintiff's contention that excessive use of force was involved is central to her

19  claim of Fourth Amendment violation.  The court will discuss first whether any issue of material

20  fact exists as to Plaintiff's claim for constitutional violation.  Defendants have alleged a number

21  of affirmative defenses with respect to various Defendants.  Upon finding that an issue of

22  material fact with respect to constitutional violation remains, the court will proceed to discuss

23  each of Defendants affirmative defenses.

24

25      ***A.  Plaintiff has Shown Issues of Material Fact with Regard to Constitutional***

26  ***Violation Remain***

27

28      It is true that "the manner in which a warrant is executed is subject
       to later judicial review as to its reasonableness." <u>Dalia v. United States</u>,

-10-

441 U.S. 238, 258 (1979). Unnecessary destruction of property or use of excessive force can render a search unreasonable. <u>Boyd v. Benton County</u>, 374 F.3d 773, 780 (9th Cir.2004); <u>Liston v. County of Riverside</u>, 120 F.3d 965, 979 (9th Cir.1997). Deciding whether officers' actions were reasonable requires us to balance "the nature and quality of the intrusion on the individual's implausible Amendment interests against the countervailing governmental interests at stake." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989) (internal quotation marks omitted).

<u>United States v. Ankeny</u>, 502 F.3d 829, 835 (9th Cir. 2007).

As a threshold matter, Defendants contend that Plaintiff was not "seized" for Fourth Amendment purposes because Plaintiff was not the object of the search nor the individual that police intended to seize by releasing Bronx.  A Fourth Amendment seizure occurs "where there is a governmental termination of freedom of movement through means intentionally applied." <u>Brower v. County of Inyo</u>, 489 U.S. 593, 597 (1989).  Case authority in this circuit indicates that the term "intentionally applied" does not refer to the identity of the individual seized, it refers to the use of means that are intended to seize *an individual*.  <u>See</u> <u>Rogers v. City of Kennewick</u>, 2006 WL 2244514 (9th Cir. 2006) (holding that it is of no consequence that the person seized is not the person police were looking for so long as police actions were intentional).  Although not a published opinion, the decision in <u>Rogers</u> is a police dog bite case with facts similar to those at bar.  There, police officers deployed a "find and bite" police dog intending that the dog would find and bite any human it located as it was trained to do.  <u>See also</u> <u>Garcia v. City of Sacramento</u>, 2010 WL 3521954 (E.D. Cal. 2010) at *2 (reliance on <u>Rogers</u> to hold Fourth Amendment analysis of police dog bite on innocent party proper).

Further, the decision in Rogers accords with an appellate decision in another circuit holding that an innocent person injured by a police dog intentionally deployed in a residence where an innocent third person was located.  <u>See</u> <u>Vathekan v. Prince George's</u> County, 154 F.3d 173, 178-179 (4th Cir. 1998) (reasonableness of deployment of police dog analyzed under Fourth Amendment standard).  The court finds that authority cited by Defendants for the

proposition that Plaintiff was not subject to a Fourth Amendment seizure is distinguishable.  The court finds that Plaintiff was subject to a seizure within the meaning of the Fourth Amendment when officer Dalton intentionally released Bronx with the expectation that it would locate, and could bite and hold any person it encountered in the residence.

The next issue is whether police applied an unreasonable level of force in seizing Plaintiff.  See Graham v. Connor, 490 U.S. 389, 396 (1989) (claims of excess use of force are examined for reasonableness).  The factors involved in that inquiry include "the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."  Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005)(quoting Graham 490 U.S. at 396).

As an initial matter, the court notes it is commonly recognized that the reasonableness of the use of force is usually a question for a finder of fact, rather than a question of law.  Chew v. Gates, 27 F.3d 1432, 1443 (9th Cir. 1994).  The court finds there is no shortage of factual bases upon which a trier of fact could find that the level of force used was unreasonable.  Defendants' justification for the level of force employed rests solely on their assessment of the probability that Thoms, would be present.  There is no alternative rationale for the deployment of an attack dog because the search warrant that was issued prior to the search does not authorize the seizure of any person, nor does it give any indication that there was an expectation of finding anyone in the residence.  Plaintiff has alleged sufficient facts to call into question Defendants' reliance on 20-year old information linking the address, but not the known occupants of that address, with a person that is alleged to have been dangerous at some time in the past.  In addition, a finder of fact could infer an unreasonable level of force was deployed from the fact that the warrant as initially filled out by the magistrate did not authorize a night search but was later changed in the

absence of any information in the warrant application that would justify a night search.  Finally, as Plaintiff correctly points out, a trier of fact could infer from the lack of any evidence indicating exigency that the decision to conduct a search at night in the home of a person who was known to be disabled was unreasonable.

The court concludes that Defendants are not entitled to summary judgment on the issue of whether Plaintiff was subject to an unreasonable search in violation of the Fourth Amendment based on both the unreasonable use of force and the lack of any justification for the conduct of the search at night.

### B.  Defendants' Affirmative Defenses

With regard to Plaintiff's claim against Dalton under the Fourth Amendment, Defendants contend (1) Dalton is not liable because no evidence exists to indicate he violated Plaintiff's Fourth Amendment rights; (2) the level of force used was reasonable, and (3) Dalton is entitled to qualified immunity.  Defendants also contend that Police Chief Williamson is entitled to summary judgment as to Plaintiff's Fourth Amendment Claims under Ashcroft v. Iqbal, 556 U.S. 662 (2009) because he was not connected in any way with the events surrounding the search and knew nothing of it until after the fact.  Defendant City of Bakersfield contends it is not liable under Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978) because there is no evidence of a policy, custom or established practice that can be said to have caused or contributed to the harm Plaintiff suffered.  The court will consider Defendants' contentions with regard to Dalton, Williamson and City of Bakersfield in that order.

#### 1. Dalton

Defendants' argument regarding the non-existence of evidence linking Dalton to any infringement of Plaintiff's Fourth Amendment Rights confuses the issue of a right to search and the officer's conduct during the search.  Defendant emphasizes that Dalton was only called upon

to aide in the search and that he had nothing to do with the warrant application or investigation that preceded the search.  These contentions are correct as is Defendant's contention that Dalton had a right to rely on the validity of the search warrant.  Franks v. Delaware, 438 U.S. 154 (1978).  The issue that Defendants bypass is whether there is no issue of material fact as to whether Dalton acted lawfully when he released Bronx to search the house.  As noted previously, there is absolutely nothing in the search warrant that indicates the need for the use of an attack police dog,  much less its deployment at night in a home known to be inhabited by a non-suspect.  To reiterate, it is not the legality of the search that is at is at issue, it is the reasonableness of the force use in the seizure of Plaintiff.  There is no evidence to indicate that force was under the control of anyone other than Dalton and, as discussed above, the reasonability of the deployment of that force is a matter for jury determination.

Defendant's contention that Dalton cannot be liable because Plaintiff was not subject to a "seizure" for purposes of the Fourth Amendment is unsupported for the reasons discussed above.  Defendants' final contention is that Dalton is entitled to qualified immunity.

To determine whether qualified immunity applies, the threshold question is whether, in the light most favorable to the party asserting injury, the facts show an officer's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001); Robinson v. Solano County, 278 F.3d 1007, 1012 (9th Cir. 2002) (en banc).  If no constitutional right was violated, immunity attaches and the inquiry ends.  Saucier, 533 U.S. at 201.  If a constitutional right would have been violated were a plaintiff's allegations established, the next step is to ask whether the right was clearly established in light of the context of the case.  Id.  Finally, the contours of the right must be clear enough that a reasonable officer would understand whether this or her acts violate that right.  Id. at 202.

As discussed, Plaintiff has raised an issue of material fact as to Plaintiff's right under the

Fourth Amendment to be free from unreasonable seizure.  The first prong of qualified immunity

is therefore answered in the affirmative and the court proceeds to determine if the right alleged

to be violated was well established at the time of the alleged violation.  Defendants point to the

relative sparsity of case authority on police dog bites to support their contention that the right at

issue is not well established and that, in any event, Dalton satisfied any established requirements

by announcing several times that he was going to turn Bronx loose and that Bronx would bite

anyone he encountered.  Plaintiff alleges there was no warning.  Defendants' and Plaintiff's

arguments miss the point.  The issue is the reasonableness of the application of force, not the

modality of force applied.  The right of an individual to be free of excessive force is well

established.  The standard for the assessment of a claim of excessive use of force is the same as

the standard for the determination of qualified immunity – the reasonableness of the officer's

actions.  Since the court has determined that the reasonableness of Daltons action in deploying

Bronx off-leash is a matter for jury determination, Dalton is not entitled to qualified immunity

on the issue of Fourth Amendment violation.

### 2.  Police Chief Williamson

The court assumes for purposes of this discussion that Williamson is being sued in his

individual capacity.  Were that not the case Plaintiff's suit against Williamson would be

duplicative of the suit against the City of Bakersfield.  See McRorie v. Shimoda, 795 F.2d 780,

783 (9th Cir. 1991) (suit against a governmental officer in his official capacity is equivalent to a

suit against the governmental entity itself.)

Liability under 28 U.S.C. section 1983 cannot be predicated on the theory of respondeat

superior, that is, that a supervisor is liable for the wrongful acts of his subordinates.  See Taylor

v. List, 880 F.2d 1040, 1045 (9th Cir.1989).  Under section 1983, a supervisor may be liable

only if there exists either "(1) his or her personal involvement in the constitutional deprivation or

(2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Mackinney v. Nielsen, 69 F.3d 1002, 1008 (9th Cir.1995). A plaintiff may not seek to impose liability on defendants merely upon position of authority, based on vague or other conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Williamson cannot be liable for the constitutional harm suffered by Plaintiff unless facts are alleged that show Williamson "'set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or reasonably should [have] know[n] would cause others to inflict the constitutional injury.' [Citations]" Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).

As an initial matter, the court notes that Plaintiff's opposition to Defendants' motion for summary judgment does not address section 1983 claims against either Williamson or the City of Bakersfield. A review of the facts alleged in the complaint reveals only conclusory allegations concerning policies, customs and procedures that caused the violation and/or ratification by supervisors and officials of the conduct at issue. In her opposition to Defendants' motion for summary judgment, Plaintiff alleges no facts at all relating to Williamson or concerning the existence of policies or customs or instances of ratification by Williamson. The court concludes Williamson is entitled to summary judgment in his favor with regard to Plaintiff's claim of violation of rights under the Fourth Amendment in violation of section 1983.

### 3. City of Bakersfield

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. New York City Dept. of Soc. Services, 436 U.S. 658, 691 (1978). A municipality cannot be made liable by application of the doctrine of respondeat superior. See id. at 691. Generally, municipal liability must be attributable to official policy or custom. See City of Canton v. Harris, 489 U.S. 378, 389 (1989).

While "policy or custom" normally imply more than a single instance of conduct, municipal liability may be imposed "where a first-time decision to adopt a particular course of action is directed by a governmentally authorized decisionmaker." Larez, 946 F.2d at 646 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).

Plaintiff's Fourth Amendment Claim against City of Bakersfield fails for the same reason as the claim against Williamson. Plaintiff has failed to allege the existence of any policies or customs (beyond those alleged in conclusory language in the complaint) that could fairly be said to cause the constitutional harm Plaintiff suffered. As was the case with the Fourth Amendment claim against Williamson, Plaintiff appears to have abandoned the claim against City of Bakersfield by not alleging any facts at all concerning the existence of policies or customs in her opposition to Defendants' motion. The court therefore finds City of Bakersfield is entitled to summary judgment in its favor with regard to Plaintiff's claim for violation of Plaintiff's Fourth Amendment rights.

## II.  State Law Claims

### A.  Statutory Immunity to State Law Claims

The primary contention asserted by Defendants as to all of Plaintiff's state law claims is that Defendants are immune from liability under state law pursuant to California Government Code sections 821.6 and 815.2. The court will address this contention before proceeding to consideration of Defendants' arguments regarding the individual state law claims.

#### 1.  California Government Code § 821.6

The general rule is that "a public employee is liable for injuries resulting from his or her conduct to the extent that a private individual is liable. Strong v. California, 201 Cal.App.4th 1439, 1449 (2nd Dist. 2011). An exception is provided by Cal. Gov't Code § 821.6 which provides "[a] public employee is not liable for injury caused by his instituting or prosecuting any

judicial or administrative proceeding within the scope of his employment, even if he acts

maliciously and without probable cause." Id.  Historically, California courts have confined the

reach of section 821.6 to actions for malicious prosecution.  Sullivan v. County of Los Angeles,

12 Cal.3d 710, 721 (1974).  Later decisions have held that the scope of individuals immunized

by section 821.6 is to be construed liberally.

> As noted above, California law grants immunity to any "public employee"
> for damages arising from malicious prosecution. (§821.6.)  "Although
> Government Code section 821.6 has primarily been applied to immunize
> prosecuting attorneys and other similar individuals, this section is not
> restricted to legally trained personnel but applies to all employees of a
> public entity.  [Citiations.]  Section 821.6 "applies to police officers as
> well as public prosecutors since both are public employees within the
> meaning of the Government Code."

Asgari v. City of Los Angeles, 15 Cal.4th 744, 756-757 (1997) (internal citations omitted).

Defendants have attempted to untether the immunity for public employees from the

context of malicious prosecution by quoting the above paragraph as it was quoted in Strong; that

is, by omitting the first sentence.  See Strong, 201 Cal.App.4th at 1461 (quoting the above

paragraph from Asgari, but omitting the first sentence containing the phrase "arising from

malicious prosecution").   California courts have held that immunity to liability under section

821.6 may extend to some claims other than malicious prosecution.  See Gillan v. City of San

Marino, 147 Cal.App.4th 103, 1048 (2nd Dist. 2007) (recognizing extension of immunity

conferred by section 821.6 to related claims for defamation and IIED).  However, no party has

cited and the court cannot find any instance where the immunity conferred by section 821.6

extends to harms to individuals who are entirely collateral to any legal or administrative

proceedings.  Neither Gillan or Strong provide any basis for the extension of statutory immunity

beyond *could have* been brought instead of, or as part of, an action for malicious prosecution.  In

Gillian the plaintiff was detained and prosecuted on a charge of sexual molestation of a minor.

The court held section 821.6 provided immunity from claims of defamation and IIED but not for

violation of a claim of false arrest or false imprisonment.  Gillan, 147 Cal.App.4th at 1050.

The holding in Strong is somewhat more ambiguous because the damage alleged was not connected to a malicious prosecution but to the failure of a responding officer to obtain and maintain information regarding the other party in a vehicle accident where the plaintiff was wrongly described as the responsible party.  201 Cal.App.4th at 1445-1446.  Without expressing any opinion as to whether the decision in Strong represents a broadening of the category of claims against which a public employee may be held immune, the factual context in that case is distinguishable from that of the present case in that the plaintiff in Strong  had, at least initially, been identified as the subject of investigation in the vehicle accident for which he was later found not at fault.  In the case at bar, Plaintiff had no procedural connection at all with whatever proceedings or investigation were underway.  Pursuant to the case authority cited above, the court has concluded that Plaintiff was "seized by force intentionally applied" so as to come within the protections of the Fourth Amendment.  However, the distinction upon which the immunity under section 821.6 turns is, by the plain language of the statute, whether or not there is a judicial or administrative proceeding instituted against the plaintiff, not whether or not the plaintiff was seized or arrested within the meaning of the Fourth Amendment.

The court finds that the California Supreme Court's holding in Asgari is controlling insofar as it conditions immunity under section 821.6 to claims at least tangentially related to official or administrative *proceedings brought against a plaintiff*.  The court finds that the immunity provided by section 821.6 has no application where, as here, the plaintiff had no legal connection to the investigation, proceeding or prosecution during which the injury occurred.

### 2. California Government Code § 815.2

California Government Code section 815.2 subsection (a) provides that a governmental entity is derivatively liable for "injury proximately cause by an act of omission of an employee

of the public entity within the scope of his employment if the act or omission would, apart from

this section, given rise to a cause of action against that employee or his personal

representatives."  Id.; Asgari, 15 Cal. 4th at 753 n.6.  Correspondingly, subsection (b) of section

815.2 provides that a governmental entity "is not liable for an act or omission of an employee of

the public entity where the employee is immune from liability."  Asgari, 15 Cal. 4th at 753 n.5.

Having found that Dalton or any other individual Defendant is not entitled to immunity

pursuant to Government Code section 821.6, it follows that the entity defendant, City of

Bakersfield is not entitled to derivative immunity pursuant to section 815.2(b).

### B. California Civil Code § 52.1

California Civil Code section 52.1 (the "Bane Act") provides a cause of action in equity

and statutory civil penalty for interference "by threats, intimidation, or coercion" or attempted

interference, "with the exercise or enjoyment by any individual or individuals of rights secured

by the Constitution or laws of the United States, or of the rights secured by the Constitution or

laws of this state."  Cal. Civ. Code § 52.1(a).  The action may be brought by the Attorney

General or any District Attorney, section 52.1(a), or by the individual suffering the intimidation

or coercion.  § 52.1(b).  "Civil Code section 52.1 does not extend to all ordinary tort actions

because its provisions are limited to threats, intimidation, or coercion that interferes with a

constitutional or statutory right."  Venegas v. County of Los Angeles, 32 Cal.4th 820, 843

(2004).  The text of the Bane Act indicates that a cause of action under the act requires a

predicate – the application of threat, intimidation or coercion – and an object – interference with

a constitutional or statutory right.  The question that arises in a case such as this is whether the

application of coercive force in the form of the incidental injury of a bystander can be both the

predicate and the object thereby satisfying the elements of a cause of action under the Bane Act.

Defendants contend that Plaintiff cannot state a claim under the Bane Act because there

was no state or federal right that was interfered with separate from the Fourth Amendment excessive force violation.  In decisions prior to 2012, this court and other district courts have held in order to state a claim under the Bane Act, "the coercive force applied against a plaintiff must result in an interference with a separate constitutional or statutory right."  Rodriguez v. City of Fresno, 819 F.Supp.2d 937, 953 (E.D. Cal. 2011).  More recently, this court has noted that the "legal landscape has evolved since Rodriguez, including the more recent decision in Shoyoye v. County of Los Angeles, 32 Cal.App.4th 947 (2012).  In Bender v. County of Los Angeles, 217 Cal.App.4th 968 (2nd Dist. 2013) the California Court of Appeals reviewed a number of District court decisions prior to that Shoyoye and held that, to the extent those cases held that an unlawful seizure or arrest committed with unlawful use of force did not constitute a violation of the Bane Act, those cases do not reflect the current state of California Law.  See id. at 980-981. In Bender, the court held that where "an arrest is unlawful *and* excessive force is applied in making the arrest, there has been coercion 'independent from the coercion inherent in the wrongful detention itself.'"  Id. at 978 (quoting Shoyoye 203 Cal.App.4th at 959).

        Although federal courts have not uniformly agreed on the significance of the holding in Shoyoye, this court has followed the Northern District's decision in N.H. v. City of Alameda, 2013 WL 1701591 (N.D. Cal. 2013) by interpreting Shoyoye for the proposition that "where Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional [police] conduct is at issue, there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force" at the pleading stage. Rodriguez v. City of Modesto, 2013 WL 6415620 (E.D. Cal. 2013).  This approach aligns with the decision in Bender by leaving open the chance that a plaintiff who alleges an improper seizure or arrest may, upon development of facts, be able to show that excessive force was employed and thereby prevail in a claim under the Bane Act.

Although the case is close, the court finds that Plaintiff has proffered facts that, if proven at trial, would show that she was seized within the meaning of the Fourth Amendment, that there was no justification for the seizure *and* that excessive force was applied.  This would bring the factual context of this case into alignment with that of <u>Bender</u>.  The court will therefore decline at this time to grant summary judgment as to Plaintiff's claim pursuant to the Bane Act.

### C.  Assault And Battery

To be liable for the tort of battery, a defendant must have the intention to harm or offend.  <u>Brown v. Ransweiler</u>, 171 Cal.App.4th 516, 526-527 (4th Dist. 2009) (listing elements of battery to include: (1) intent to harm or offend (2) unreasonable force, (3) no consent, (4) harm to plaintiff, and (5) causation).  Defendants contend Plaintiff cannot state a claim for relief on a theory of battery because she cannot show that Dalton had the requisite intent to harm or offend.  As discussed previously, Dalton deployed Bronx with the intent that Bronx would "find and bite" any person encountered.  There is no authority for the proposition that there be a subjective intent to harm an innocent person.  As the police dog-bite cases previously cited by the court illustrate, the deployment of a police dog indoors evinces an intent to seize any person located therein.  Because it is not disputed that Dalton intentionally deployed Bronx inside Plaintiff's home, Defendant's contention that Dalton acted without the requisite intent is without merit.  Defendant is therefore not entitled to summary judgment as to Plaintiff's fifth claim for relief

### D.  Negligence

California Government Code section 820.4 provides that "[a] public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law."  Defendants contend that Plaintiff cannot state a claim for negligence against Dalton because Dalton "reasonably believed that Thomas Thoms would be inside the residence" based on CJIS and probation records.  Doc. # 39-1 at 37:9-10.  Thus, Defendants contend, Dalton had reason to

deploy Bronx and cannot be considered to have failed to exercise due care.  Defendants

argument fails principally because it is not only the *fact* of the Bronx's deployment that is at

issue; it is also the *manner* in which the K-9 unit was deployed.  As noted above, whether Dalton

should have allowed Bronx to proceed out of sight and off-leash under the totality of the

circumstances of the search is a highly contested issue.  The decision whether Dalton managed

Bronx's deployment with due care is a matter for jury decision.


THEREFORE, in accord with the foregoing decision, it is hereby ORDERED that:

1.      Defendants' motion for summary adjudication with regard to the liability of Chief

Wilson and City of Bakersfield to Plaintiff's first claim for relief for violation of rights under the

Fourth Amendment is hereby GRANTED.  Plaintiff's first claim for relief is hereby

DISMISSED with prejudice as to Defendants Williamson and City of Bakersfield.

2.      Summary adjudication is hereby GRANTED with regard to Plaintiff's abandoned claims

including Plaintiff's second, third and sixth claims for relief; Plaintiff's claims for violation of

the Rehabilitation Act, the Americans with Disabilities Act and Plaintiff's state law claim for

intentional infliction of emotional distress.

3.      In all other respects Defendants' motion for summary judgment or summary adjudication

is hereby DENIED.


IT IS SO ORDERED.

Dated:   April 8, 2014        _____

                             SENIOR  DISTRICT  JUDGE